# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 2591 | **DATE** | 5/17/2001 |
| **CASE TITLE** | Russell W. Zeidler vs. A&W Restaurants, Inc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. For the reasons set forth on the attached order, the Court grants defendant's petition for attorney's fees and costs. Costs are taxed in favor of defendant and against plaintiffs in the amount of $2,475.13. In addition, defendant's motion for attorneys' fees and expenses (64-1, 64-2) is granted; defendant is awarded attorney's fees of $150,000 and travel expenses of $758.09.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | **Document Number** |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | MAY 21 2001 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | ED-7 FILED FOR DOCKETING | | |
| OR | courtroom deputy's initials | 01 MAY 20 AM 10: 57 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

RUSSELL W. ZEIDLER, NANCY )
ZEIDLER and R.W. HOSPITALITY CORP., )
)
      Plaintiffs, )
)
vs. ) Case No. 99 C 2591
)
A & W RESTAURANTS, INC., )
)
      Defendants. )

DOCKETED
MAY 21 2001

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

    Plaintiffs Russell W. Zeidler, his wife Nancy Zeidler, and their company R.W. Hospitality Corp., the holders of an A&W Restaurant franchise, sued A&W Restaurants, Inc. after it terminated the franchise in March 1998. The Court dismissed certain of plaintiffs' claims in January 2000, *see Zeidler v. A&W Restaurants, Inc.*, No. 99 C 2591, 2000 WL 122616 (N.D. Ill. Jan. 25, 2000), and granted summary judgment in favor of A&W on the remaining claims in January 2001. *See Zeidler v. A&W Restaurants, Inc.*, No. 99 C 2591, 2001 WL 62571 (N.D. Ill. Jan. 25, 2001). A&W has filed a bill of costs, and it has moved for an award of attorney's fees and travel-related costs pursuant to the terms of the franchise agreement. For the reasons that follow, the Court grants A&W's requests but awards costs and fees in an amount somewhat less than A&W has requested.

### Discussion

1.     **Bill of costs**

    The costs itemized in A&W's bill of costs are properly taxable under 28 U.S.C. §1920,

with only a few exceptions. A&W ordered, along with the transcripts of several depositions, diskettes containing the transcript in computer-readable form and duplicate copies of the transcript in condensed type. These items were not necessary but rather were obtained for the convenience of counsel and thus are not properly taxable under the statute. *See, e.g., EEOC v. Yellow Freight Services, Inc.*, No. 98 C 2725, 1999 WL 965854, at *3 (N.D. Ill. Oct. 14, 1999); *Fields v. General Motors Corp.*, 171 F.R.D. 234, 236-37 (N.D. Ill. 1997). *Cf. Barber v. Ruth*, 7 F.3d 636, 645 (7th Cir. 1993) (cost of transcripts obtained for convenience of counsel not taxable). The Court has therefore reduced the sums claimed for the depositions of L. Kohler, L. Gelfund, K. Fellin, C. Michalski by the amounts charged for ASCII disks and condensed transcripts. We have also deducted the charge for "expedited" preparation of the transcript of Russell Zeidler's deposition as well as the amount charged by the court reporter for that deposition that exceeds the $3.00 per page rate for regular copy approved by the Judicial Conference. *See* N.D. Ill. LR 54.1(b); *Cengr v. Fusibond Piping Systems, Inc.*, 135 F.3d 445, 455-56 (7th Cir. 1998).

For these reasons, the Court taxes costs pursuant to 28 U.S.C. §1920 in the amount of $2,475.13 ($75.00 for service fees, $1809.97 for fees of court reporters; $50.50 for witness fees; $519.66 for copying fees; and $20.00 for docket fees).

2. **Motion for attorney's fees and non-taxable costs**

The franchise agreement between plaintiffs and A&W provided that

> [i]f [A&W] prevails in any legal proceeding initiated by either [A&W] or the Licensee to construe or enforce the terms, conditions, or provisions of this Agreement, including its termination provision, or to obtain damages or other relief to which either may be entitled by virtue of this Agreement, the Licensee shall pay to [A&W] its attorneys' fees and costs, as well as its other related costs,

2

> including but not limited to the costs of travel, meals and lodging associated with the legal proceeding.

Agreement §17.3. A&W seeks to recover $248,465.80 in attorney's fees and $758.09 in travel expenses.

Plaintiffs argue that the Court lacks jurisdiction to consider A&W's request, as plaintiffs had filed a notice of appeal before the fee request was filed with this Court. The Court disagrees. The filing of a notice of appeal from judgment on the merits "does not affect the court's power to act on [a] petition for attorneys' fees." *Patzer v. Board of Regents*, 763 F.2d 851, 859 (7th Cir. 1985). *See also, e.g., Albiero v. City of Kankakee*, 122 F.3d 417, 418 (7th Cir. 1997); *Kusay v. United States*, 62 F.3d 192, 194 (7th Cir. 1995).

Plaintiffs also contend that the attorney's fee provision of the contract is unenforceable because it only imposes fees against a franchisee and is contrary to public policy. The claim that a one-sided fee provision is unfair – a claim with which the Court happens to agree – provides no basis for invalidating the provision. *See generally Industrial Representatives, Inc. v. CP Clare Corp.*, 74 F.3d 128, 132 (7th Cir. 1996) ("Contract law does not require parties to be fair, or kind, or reasonable, or to share gains or losses equitably."). And plaintiffs have provided no persuasive authority supporting their public policy argument. In Illinois, a court "will not declare a contract illegal unless it *expressly* contravenes the law or a known public policy of this State." *Swavely v. Freeway Ford Truck Sales, Inc.*, 298 Ill. App. 3d 968, 975, 700 N.E.2d 181, 187 (1998) (quoting *Holstein v. Grossman*, 246 Ill. App. 3d 719, 726, 616 N.E.2d 1224, 1229 (1993). Plaintiffs have cited nothing in Illinois law, in particular, the Illinois Franchise Disclosure Act (the state's relatively comprehensive attempt to regulate dealings between franchisors and

franchisees) that hints that an attorney's fee provision of this type is contrary to public policy. They have provided the Court with no persuasive authority supporting this argument. Nor have they shown that the provision is unenforceable because it constituted part of a "contract of adhesion." Indeed, Russell Zeidler's affidavit establishes not that the attorney's fee provision was presented as a take-it-or-leave-it deal, but rather that it was "not discussed." R. Zeidler Aff. ¶2. Under the circumstances, the Court has no basis to decline to enforce the attorney's fee provision.

Finally, plaintiffs argue that the attorney's fees sought by A&W are not commercially reasonable. In two recent cases, the Seventh Circuit has limited the scope of a court's inquiry regarding the award of attorney's fees pursuant to a private contract. In *Balcor Real Estate Holdings, Inc. v. Walentas-Phoenix Corp.*, 73 F.3d 150 (7th Cir. 1996), the parties' agreement required one party to hold the other harmless against any attorney's fees and expenses incurred as a direct result of the first party's breach; as in the present case, the agreement contained no express "reasonableness" limitation. The court read such a limitation into the agreement but stated that the best evidence of market value (and thus reasonableness) is what people pay for it, and that "the best guarantee of reasonableness" is whether the party seeking to recover its attorney's fees has actually paid them to its lawyer. *Id.* at 153. In *Medcom Holding Co. v. Baxter Travenol Laboratories, Inc.*, 200 F.3d 518 (7th Cir. 1999), the court expanded on *Balcor*, reversing a reduced fee award by a district judge who had proceeded in the way courts normally do in assessing attorney's fees under fee-shifting statutes, looking at, among other things, the

sufficiency of the itemization of the attorney's time.[1] The court reiterated that "[i]f the bills were paid [by the party seeking to recover fees], this strongly implies that they meet market standards." *Id.* at 520. It noted that the reason for reading a reasonableness requirement into such agreements is "to guard against moral hazard – the tendency to take additional risks (or run up extra costs) if someone else pays the tab." *Id.* at 521. But the proper way to assess fee requests in this context is "to ensure that they were reasonable in relation to the stakes of the case and [the opposing party's] litigation strategy ...." *Id.* In other words, were the requested amounts "fees that commercial parties would have incurred and paid knowing that they had to cover the outlay themselves?" *Id.*

Under *Balcor* and *Medcom*, the fact that A&W paid attorney's fees of around $250,000 is certainly the starting point for the Court's analysis, but it is not the ending point. If it were, the Seventh Circuit would not have required a "reasonableness" inquiry at all; it would have directed district judges to begin and end their analysis with determination of the amount of attorney's fees the party had actually paid. Indeed, the fact that A&W paid attorney's fees of $250,000, knowing that it could hold out its hand to plaintiffs if it prevailed, does not mean that it willingly would have incurred and paid the same amount absent that contractual provision. A&W has submitted

---

[1] The Seventh Circuit stated in *Medcom* that though itemization is required under fee-shifting statutes, it "is far less common when businesses pay their own lawyers, for having attorneys keep detailed records is a cost that many clients prefer to avoid." *Id.* at 520. This Court's experience as a practicing lawyer representing both small and large businesses, as well as individuals (through June 1999), was that the desire for detailed billing was nearly universal on the part of business clients and increased with both the size of the business and the frequency with which it was involved in litigation. Providing such detail does not present an extra cost for the client; charging clients for the time it takes to record the attorney's time and prepare the bill is virtually unheard of in the practice of law. In this case, however, there is no issue regarding the sufficiency of the billing records.

5

nothing to support such a finding, such as an affidavit from a responsible person within the company or evidence of fees incurred in similar litigation without a fee-shifting contract.

A&W argues that the fact that plaintiffs claimed damages of $1.66 million indicates that fees of around $250,000 – around 15% of the damages sought – are reasonable. That argument has some surface appeal, but it does not withstand scrutiny. It is not particularly unusual for the amount a plaintiff claims in a complaint, or even (as here) in response to a discovery request, to be inflated, sometimes wildly so. For this reason, a blinders-on look at the *ad damnum* is not enough to justify the attorney's fees spent to defend it. Rather, a court must look behind the damages claimed – just as A&W no doubt did when it received the complaint and interrogatory answers – to determine if there was any reasonable basis to support the amount claimed. The answer in this case is no. Of the $1.66 million sought by plaintiffs, $1.37 million consisted of profits they claimed to have lost as a result of the termination of their franchise. But as A&W knew from an early stage in the lawsuit, plaintiffs had posted "significant losses every year that [their restaurant] was in operation," *see* A&W Mem. in Support of Summ. Judgt.. at 21, making their claim of lost profits speculative at best and frivolous at worst. In short, by any realistic assessment, this was a lawsuit involving a damage claim of at most $300,000 ($120,000 for their wrongful termination claim and $180,000 for their rescission claim), and probably far less than that, as the rescission claim was virtually unsupported. Spending $250,000 to defend a lawsuit involving a claim worth probably no more than $120,000 and at most $300,000 taxes the limits of reasonableness, even without analyzing the amount of work that the case *reasonably* required.

*Medcom* indicates that the amount of fees incurred by the opposing party is a factor to be considered in determining the reasonableness of a fee award. *Medcom,* 200 F.3d at 521.

Plaintiffs argue that any fee award should be reduced to $91,000, the amount they spent for attorney's fees and costs. Here some part of the difference between plaintiffs' fees and A&W's results from the fact that plaintiffs' lawyer charged an hourly rate of $175 early in the case and $195 in the latter stages, as compared with rates ranging from $160 to about $300 for A&W's attorneys. The Court is persuaded that the rates charged by A&W's lawyers are within the range charged in the market by attorneys of their level of experience for commercial litigation and are therefore reasonable. The effective overall hourly rate for the time claimed by A&W (including paralegal time) is around $235: $250,000 divided by 1060 hours. If plaintiffs' attorneys fees were refigured at that hourly rate, they would have been charged $119,000: 506 hours at $235 per hour. The resulting disparity, though not as great as plaintiffs suggest, is still significant; A&W's fees were more than double the refigured amount for plaintiffs. This at least suggests the possibility that the claimed fees are unreasonable.

A closer look at the particulars of A&W's fee request supports a finding that the requested award is not commercially reasonable. Though, as *Balcor* and *Medcom* indicate, the proper analysis does not entail the type of task-by-task assessment common in cases involving fee-shifting statutes, it is nonetheless worth noting that A&W's attorneys appear to have spent upwards of 225 hours (virtually all the time they charged between August 8 and September 14, 2000) preparing the initial materials supporting their summary judgment motion, namely the motion, supporting brief, and Local Rule 56.1 submission. This is nothing short of mind-boggling, even accounting for the significant burdens that Local Rule 56.1 imposes.[2] And that is

---

[2] At the end of August, the second-chair attorney representing A&W evidently left the law firm, but the time entries following that date do not indicate that this led to much if any
(continued...)

7

just one piece of the case. Assessed against this Court's experience in preparing summary judgment submissions as a lawyer (and billing clients for that time) and reviewing them as a judge, the staggering amount of time spent on the summary judgment submission suggests that A&W's attorney's fees were not commercially reasonable in a case that was not particularly complicated.

One might ask why A&W would have paid fees that were not commercially reasonable. Several possibilities come to mind. The responsible people within A&W might not have realized that the fees being charged were unreasonable for the case. Or they simply might not have had any inclination to challenge the attorney's bills – perhaps the person responsible for approving the bill was given no incentive to keep costs down. Or A&W might have been willing to incur extra-large fees because of some motive not directly related to the merits of plaintiffs' claims: the Court's own experience in representing clients subjected to the risk of frequent lawsuits (which is certainly the case with franchisors like A&W) suggests that the desire to "make a point" to other franchisees contemplating suit might have played a role. None of these rationales, however, or anything else offered by A&W, makes the attorney's fee request any less unreasonable in relation to the stakes of the case and plaintiffs' litigation strategy.

Considering A&W's request in light of the nature and level of complexity of the case, including a *realistic* assessment of the damages claimed, and mindful of the "moral hazard" concern discussed in *Medcom,* the Court finds that the attorney's fees claimed by A&W are not commercially reasonable. Under the circumstances, the Court finds that $150,000, together with

---

[2](...continued)
duplication of effort.

8

the $758.09 in travel expenses claimed, represents a commercially reasonable award. An award of that amount is roughly commensurate with the stakes involved in the case and its relative lack of complexity.

Finally, in several *pro se* submissions, plaintiff Russell Zeidler has asked the Court to deny outright A&W's request for fees and costs on the grounds that its attorneys have perpetrated a fraud on the Court. Evidently he has also filed a complaint against the A&W attorneys before the Illinois Attorney Registration and Disciplinary Commission. The alleged "fraud" concerns the timing of A&W's attorneys' communications with Andrew Hester, who plaintiffs' attorney had retained as an expert but who plaintiffs ultimately elected not to offer as a testifying expert.

Some background is required in order to explain the context of Mr. Zeidler's request. At a status hearing on or about June 27, 2000, some four weeks after the deadline set by the Court for plaintiffs' expert witness disclosures under Fed. R. Civ. P. 26(a)(2) and on the eve of the cutoff date for all discovery, plaintiffs' attorney orally requested permission to designate an expert. After hearing argument, the Court granted plaintiffs' request, subject to their compliance with Rule 26(a)(2) and production of the expert for a deposition by August 7, 2000. Plaintiffs' attorney thereafter advised A&W's counsel of Hester's identity. Sometime in late July, plaintiffs' attorney evidently learned that Hester's opinion would be unfavorable to plaintiffs in material respects, so he did not tender a report required by Rule 26(a)(2) and apparently indicated to A&W's counsel that plaintiffs would not be calling Hester to testify.

On or about August 1, Hester took it upon himself to contact defendants' attorneys and sent them his draft report, which was unfavorable to plaintiffs. At a status hearing on August 8, 2000, defendants' counsel took the position that they could use Hester's report as evidence

9

supporting their motion for summary judgment and could, if they wished, call Hester as a defense witness at trial. Plaintiffs' attorney objected, but the Court determined that it was unnecessary to resolve the dispute at that moment and determined to resolve it, if necessary, in the context of the anticipated summary judgment motion, when the significance of the point would be easier to assess. A&W submitted materials from Hester in support of its motion for summary judgment, and plaintiffs moved to strike those materials on the grounds that defendants could not properly use plaintiffs' retained consultant against them. The Court ultimately determined that consideration of Hester's evidence was unnecessary and that A&W's motion for summary judgment could and should be granted even without that evidence. Accordingly, the Court denied as moot plaintiffs' motion to strike.

Mr. Zeidler's "fraud on the court" claim arises from the fact that A&W's attorneys, in responding to the motion to strike, misstated the date on which they first communicated with Hester: they reported that it was August 4, not August 1. Mr. Zeidler claims that this was not an innocent mistake; he says that they "ambushed" him with Hester's opinions at his deposition held on August 7, and that they misstated the date of their initial contact so that they would not have to explain why they had not advised plaintiffs' attorney before the deposition of their communications with Hester.

The Court, having reviewed Mr. Zeidler's submissions and A&W's response, which include affidavits from its attorneys, is persuaded that the error was unintentional on the part of A&W's counsel. Just as importantly, it was not material to any issue before the Court. The Court was asked to determine whether it was appropriate for A&W's lawyers to have obtained, and sought to use, information from Hester; it was of no consequence to that dispute whether the

10

initial contact had taken place on August 1 or August 4. Indeed, as previously indicated, the entire dispute was ultimately immaterial to the summary judgment motion. The unintentional misstatement by A&W's counsel does not provide a basis for denying A&W's request for attorney's fees and costs.

As for the underlying dispute, now as before there is no reason for the Court to decide it. We will make only two comments. First, the Court believes that Hester acted outside the bounds of propriety in taking it upon himself to contact A&W's lawyers. He was retained as a consultant and/or expert for the plaintiffs; even if the privileged nature of their relationship was not described to him by plaintiffs' attorneys, common sense would indicate that it was inappropriate for him to offer his services to the other side. Second, A&W's attorneys, as a matter of prudence, should have sought guidance from the Court before communicating with Hester regarding any matter of substance. The Court hastens to add that it does not mean by this to find that counsel acted improperly – there is, after all, a good deal of uncertainty about the law in this area, *see generally House v. Combined Insurance Co. of America*, 168 F.R.D. 236, 240-47 (N.D. Iowa 1996) (discussing competing lines of authority), particularly where (as here) the expert has actually been "designated" by the opposing party. Rather, the Court makes this comment merely to suggest that the adverse consequences of a wrong guess may be significant, *see, e.g., Cordy v. Sherwin-Williams Co.*, 156 F.R.D. 575 (D.N.J. 1994) (disqualifying counsel based on communications with other side's non-testifying consulting expert), and that it is always better to be safe than sorry.

## Conclusion

For the foregoing reasons, the Court grants defendant's petition for attorney's fees and

11

costs. The Clerk is directed to tax costs in favor of defendant and against plaintiffs in the amount of $2,475.13 ($75.00 for service fees, $1809.97 for fees of court reporters; $50.50 for witness fees; $519.66 for copying fees; and $20.00 for docket fees). In addition, defendant's motion for attorneys' fees and expenses [64-1, 64-2] is granted; defendant is awarded attorney's fees of $150,000 and travel expenses of $758.09.

                                                  MATTHEW F. KENNELLY
                                                  United States District Judge

Date: May 17, 2001